Casey, Ob. J.,
dissenting:
I cannot concur in tbe rulings of tbe majority of tbe court in these cases. If tbe cases occurred as tbe claimants bave stated them in their petitions, and upon demurrer, we must assume them as proved. They are, in my opinion, under the law entitled to at least a part of the deductions claimed.
Tbe proviso to tbe 12th section of tbe act of March, 1863, expressly allows for leakage. That section is not repealed. It was in full force when tbe cases claimed occurred. “Tbe Commissioner of Internal Bevenue,” by this act, “is authorized to make rules providing for deductions on account of leakage,”
&c. Tbe reason why tbe deductions were not made was because tbe Commissioner construed the law to be discretionary with him, and that so long as be made no rules there could be no deductions. Nothing could be further from tbe true construction of tbe act. Instead of being discretionary with him, tbe right to tbe deduction is absolute. In tbe case of The Supervisors v. The United States, (4 Wallace, 435,) where tbe law said certain officers “ may, if deemed advisable, levy a special tax,” &c., it was insisted that there was a discretion vested in tbe officers whether they should levy tbe tax or not. But Mr. Justice Swayne, with great clearness, conciseness, and force, reviews tbe authorities and draws these deductions:
“ Tbe conclusion to be deduced from tbe authorities is, that, where power is given to public officers in tbe language of tbe act before us, or, in equivalent language, whenever tbe public interest or individual rights call for its exercise, tbe language used, though permissive in form, is in fact peremptory. What they are empowered to do for a third person tbe law requires' shall be done. Tbe power is given, not for their benefit, but for bis. It is placed with tbe depositary to meet tbe demands of right, and to prevent a failure of justice. It is given as a remedy to those entitled to invoke its aid, and who would otherwise be remediless. In all such cases it is held that tbe intent of tbe legislature, which is tbe test, was not to devolve a mere discretion, but to impose a positive and absolute duty.” This clear and authoritative interpretation, in every word and syllable, is as applicable to tbe case in band as it was to that in which it was delivered; and, in my opinion, is decisive of at least two of these cases.
*101 By tbe 55th section of tbe act of June 30,1864, (13 Stat. L , 243,) tbe tax “ is to be levied, collected, and paid on all spirits that may be distilled and sold, or distilled and removed for consumption or sale.” By tbe 60tb section, p. 245, provision is made for bonded warehouses, in wbicb to store distilled spirits, &c. And it further provides: “ The duty on tbe spirits,” &c., “ stored in such warehouse shall be paid before it is removed from such warehouse, unless removed in pursuance of law.”
Then, the 61st section of the same act directs how they may “be removed in pursuance of law,” without the payment of duty. It enacts, “and may be transported from such warehouse to any one other bonded warehouse used for the storage of distilled spirits,” &e.; “ and after the arrival of such distilled spirits * * * * at the bonded warehouses within the district of the assessor to which it has been transferred, it shall be again inspected, and the duty shall be assessed and paid on any deficiency or reduction of the number of proof gallons, beyond such allowance for lealcage as may be established by the regulations of the Commissioner of Internal Bevenue, received at the warehouse, from the number of proof gallons as stated in the bond given at the place of shipment.”
These provisions are very plain and clear to my mind. When the spirits are removed, for consumption or sale, from the first bonded warehouse, the duty must be paid, and it is paid on the quantity removed for consumption or sale. But, if not removed from this warehouse for consumption or sale, it may, by the 61st section, be transferred, under bond, to another bonded warehouse.
And the idea that it is “ free spirits” while in transitu is a misapprehension. The law and the regulations require that it shall be transferred to the assessor of the district in which the bonded warehouse to which it is transferred shall be situated. It is not at any time under the control or direction or in the possession of the owner. It remains; at all times, until the duties shall have been ascertained and paid, in gramio legis: Nor does it matter, under this 61st section of the act of June 30,1864, for what purpose it was removed; it does not even so much as require that the purpose shall be stated. When it arrives at the warehouse to which it is transferred, it is to be regauged and reinspected, and allowance made for leakage, within the five per centum allowed by law, and ratably under *102 tlie regulations of the Commissioner. Where the leakage exceeds this, the excess cannot be allowed. All this is plain, simple, and harmonious in its requirements, and just and fair in its results. The acts are all in pu/ri materia, and are to be construed together. Tax laws operate upon material, tangible objects, and are not supposed to be levied upon that which has no existence at the time it is levied and paid. If cousumed or destroyed, by fire or flood, in transitu, it would be manifestly unfair to require the payment of the tax; but not a particle more so than upon that which has leaked or evaporated, without fault upon the part of the owner. • The bonded warehouses were established for the benefit and advantage of the United States as well as for the manufacturer of the spirits. It was to afford the distiller facilities to continue the manufacture that the government postponed the payment of the tax till the time of sale, and for the purpose of encouraging the manufacture and the consequent increase of the revenue.
By a regulation made after these transactions by the Commissioner of Internal Revenue, all these leakages claimed are allowed, under this same law, or a subsequent law using the same terms. The reason why the abatement was refused in these cases was, that no regulations had then been made by the department allowing them and prescribing the particular mode and manner of ascertaining the loss.
We have already seen that these acts, using only permissive phrases, are intended to impose positive duties upon the officers, and confer absolute rights upon citizens; and are, therefore, not discretionary, but mandatory and peremptory in their character. (4 Wallace, 435.)
Entertaining these views, I thifilt the demurrers should be overruled, and the Attorney General directed to answer over.